**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| GEORGE MOORE, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>C&N CONSTRUCTION INC.,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION FILE NO.<br><br>1:25-cv-04568<br><br>Hon. Andrea Wood |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

## I. INTRODUCTION

Telemarketing calls to numbers registered on the National Do Not Call Registry present a paradigm case for class treatment: a single company, a single calling practice, and a single set of common questions that will be answered the same way for everyone the practice touched. This is that case. Defendant C&N Construction Inc. ("C&N Construction") is a residential contracting company that sells roofing, siding, and gutter repair and replacement services. To generate business, C&N Construction's own representatives placed telemarketing calls soliciting these services directly to consumers, including Plaintiff George Moore, without regard to whether the consumers' numbers were registered on the National Do Not Call Registry, and without honoring Mr. Moore's request that the calls stop.

Plaintiff received at least nine such calls from callers who identified themselves by name and by company as calling from C&N Construction, despite the fact that his residential telephone number had been listed on the National Do Not Call Registry for years before the calls began. (Ex. 1, Decl. of George Moore ¶¶ 3–5.) C&N Construction's own corporate representative has testified that the company cannot identify any facts supporting that the individuals whose

numbers it called, including Plaintiff, ever provided their prior express written consent to be called. (Ex. 2, Dep. of Kevin Vacco ("Vacco Dep.") 49:4–23.)

Because C&N Construction's own representatives placed the calls at issue directly this case does not present the agency questions that often complicate certification of a Telephone Consumer Protection Act ("TCPA") class. The controlling question here, whether a number was called more than once while registered on the Registry, is common to the Class and resolvable on common, classwide proof drawn from C&N Construction's own calling records, its own uniform calling script and Do Not Call policy, and the testimony of its own executives. *See* Krakauer v. Dish Network, L.L.C., 925 F.3d 643 (4th Cir. 2019) ("[T]he private right of action in § 227(c)(5) offers many advantages for class-wide adjudication. It requires a plaintiff to initially show two things: a number on the Do-Not-Call registry, and two calls made to that number in a year.").

Therefore, pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), Plaintiff moves to certify the following Class:

> All persons within the United States (i) whose telephone numbers appear in C&N Construction's call records produced in this matter, (ii) whose telephone numbers were registered on the National Do Not Call Registry for at least thirty-one days, (iii) who received more than one telemarketing call from or on behalf of C&N Construction within any twelve-month period, and (iv) where the calls were placed within the four years preceding the filing of the Complaint.

## II. FACTUAL BACKGROUND

C&N Construction is a general contractor headquartered in this District that focuses largely on exterior restoration and storm damage repair, including roofing, siding, and gutter replacement. (Ex. 1, Vacco Dep. 10:20–24.) The majority of C&N Construction's outbound calls are placed to offer property inspections to homeowners in areas that recently experienced storm damage. (*Id.*)

To generate that business, C&N Construction licensed weather-forensic and contact data from a third-party vendor, HailTrace, that allowed it to pinpoint storm-affected areas and pull lists of residential and commercial contacts for those areas. (Ex. 1, Vacco Dep. 9:24–10:10, 12:4–13.) C&N Construction's own Director of Sales at the time, Dominick Martinelli, was personally responsible for pulling those HailTrace lists, and he has testified that the company "was just doing residential" and was "focused on… calling residential" numbers. (Ex. 3, Dep. of Dominick Martinelli ("Martinelli Dep.") 13:7–14.) Mr. Martinelli personally wrote the single call script used by every caller on C&N Construction's inside sales team; callers received no separate training beyond that script. (Ex. 3, Martinelli Dep. 24:13–15, 29:3–10.) C&N Construction placed these calls using Readymode, a dialing software the company licensed for its outbound calling operation, uploading both the HailTrace lists and lists from its own customer-relationship-management database into the dialer. (Ex. 2, Vacco Dep. 22:19–23:24.)

C&N Construction's founder, president, and sole owner, Curtis Eshgy, was involved in the decision to begin outbound telemarketing in late 2023 and hired Kevin Vacco and Jacquelyn Nelson to oversee it, but he was not personally familiar with the TCPA or the National Do Not Call Registry before the outbound calling program began. (Ex. 4, Dep. of Curtis Eshgy ("Eshgy Dep.") 5:6–10, 5:21–22, 6:2–9, 7:8–14.) Mr. Eshgy's understanding that the HailTrace contact information had been "cleaned or scrubbed" against the Do Not Call Registry was "just what I was told," and he could not recall who told him that. (Ex. 4, Eshgy Dep. 12:1–5, 12:12–17.)

C&N Construction's training manual states as company policy that "[a]ll call lists are scrubbed every 31 days against the National Do Not Call Registry and the Illinois Restricted Call Registry." (Ex. 2, Vacco Dep. 26:12–15.) Responsibility for that scrubbing, and for training and supervising the callers who used it, rested with just two employees, Mr. Martinelli and then Ms.

Nelson, neither of whom remains with the company. (Ex. 2, Vacco Dep. 68:16–69:22; Ex. 3, Martinelli Dep. 24:5–12.) C&N Construction's own corporate representative testified that he does not know whether that scrubbing was ever actually performed, whether it was reviewed after this lawsuit was filed, or whether any documentation exists showing that it occurred. (Ex. 2, Vacco Dep. 32:19–34:2.) Mr. Martinelli, who had day-to-day responsibility for the calling program, similarly testified that he was never the one "verifying if… calls were… for the people that were on the Do Not Call list… actually working." (Ex. 3, Martinelli Dep. 11:9–14.)

Plaintiff Moore's telephone number is a residential, non-commercial number that he uses for personal and household purposes, and it has been registered on the National Do Not Call Registry for years. (Ex. 8, Decl. of George Moore ¶¶ 3–4.) Despite that registration, Plaintiff received at least nine telemarketing calls from C&N Construction between July 2024 and April 2025, from callers identifying themselves as "Julie," "John," and "Martin" of C&N Construction. (*Id.* ¶ 5.) Plaintiff never consented to receive these calls. (*Id.* ¶ 6.) Plaintiff subsequently wrote to C&N Construction requesting a copy of its do-not-call policy; C&N Construction's own former operations manager confirmed that a search of C&N Construction's email inboxes for this litigation located correspondence "requesting to be on the Do Not Call list" from Plaintiff. (Ex. 5, Dep. of Katie Fatigato ("Fatigato Dep.") 6:23–7:2.)

Because C&N Construction placed these calls directly, through its own representatives, using its own uniform script and its own centralized (ignored) scrubbing process, the persons subjected to the same calling practice can be identified from C&N Construction's own business and call records. Plaintiff's counsel retained telecommunications expert Aaron Woolfson to analyze the call records C&N Construction produced in this litigation. (Ex. 6, Expert Decl. of Aaron Woolfson [Woolfson Deposition Ex. B] ¶¶ 1–3 (Sept. 26, 2025) ("Woolfson Decl.").)

Cross-referencing those records against the National Do Not Call Registry, Mr. Woolfson confirmed nine calls to Plaintiff's own number, ending in -3200, matching the dates identified above. (*Id.* Errata to Supp. Expert Decl. of Aaron Woolfson ¶ 3 (July 1, 2026) ("Woolfson Errata Decl.").) Applying that same objective methodology to the full production, and after excluding numbers that C&N Construction identified as belonging to pre-existing customers, Mr. Woolfson identified 528,855 calls placed to 109,642 unique telephone numbers that had been registered on the National Do Not Call Registry for more than thirty days and that received two or more calls within a 365-day period. (Woolfson Errata Decl. ¶¶ 3–10.)

## III. LEGAL STANDARD

Class certification is appropriate where the prerequisites of Rule 23(a) are satisfied and any one subsection of Rule 23(b) is met. *Bell v. PNC Bank, N.A.*, 800 F.3d 360, 373 (7th Cir. 2015). Plaintiff must prove certification is proper by a preponderance of the evidence, *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843 (7th Cir. 2022), and the class must be "sufficiently definite that its members are ascertainable," *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 577 (N.D. Ill. 2018). The inquiry "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013). The merits matter only insofar as whether the Rule 23 prerequisites are met, not whether they will ultimately be resolved in the Class's favor. *Santiago v. City of Chicago*, 19 F.4th 1010, 1016 (7th Cir. 2021).

Section 227(c) of the TCPA directs the FCC to protect residential telephone subscribers' privacy and authorizes the National Do Not Call Registry. 47 U.S.C. § 227(c)(2)–(3); 47 C.F.R. § 64.1200(c)(2). Section 227(c)(5) creates a private right of action for any "person who has received" more than one telephone call within a twelve-month period in violation of these

regulations. That liability scheme "offers many advantages for class-wide adjudication" because it "requires a plaintiff to initially show two things: a number on the Do-Not-Call registry, and two calls made to that number in a year," free of "questions of individual reliance . . . complicated contractual obligations . . . [or] theories of probabilistic injury." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019). Because damages are statutory and do not require proof of actual loss, individualized damages calculations do not defeat class treatment. *Id.*

Federal courts have accordingly and consistently certified National Do Not Call Registry classes under this framework, including classes numbering in the hundreds of thousands based on common, objective evidence of a uniform calling practice. *See, e.g., Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384 (M.D.N.C. 2015), *aff'd*, 925 F.3d 643 (4th Cir. 2019); *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) (certifying a class of more than 900,000 consumers, ascertainable through a spreadsheet identifying 930,000 unique telephone numbers that had received the calls at issue); *Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 3d 850 (N.D. Ill. 2016) (denying decertification because every class member was alleged to have suffered the same statutory injury and statutory damages eliminated the need for individualized damages inquiries); *Legg v. PTZ Ins. Agency, Ltd.*, 321 F.R.D. 572 (N.D. Ill. 2017) (certifying a class where commonality and typicality were satisfied because every class member received calls presenting uniform factual and legal questions).

## IV. ARGUMENT

### A. *The Class Satisfies Rule 23(a).*

#### *1. The Class is ascertainable.*

The Class is ascertainable. A class satisfies this threshold where it is "defined clearly" by "objective criteria rather than by . . . a class member's state of mind," and the Seventh Circuit has "declin[ed] to" adopt any heightened administrative feasibility requirement imposed by some other circuits. *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 657–58, 661 (7th Cir. 2015). Membership in the proposed Class turns on purely objective criteria drawn from C&N Construction's own records: whether a number was called more than once in a twelve-month period, and whether it was registered on the National Do Not Call Registry. That objective methodology has already been applied. Using a standardized SQL methodology, Mr. Woolfson imported C&N Construction's call detail records, filtered them for valid, answered, TCPA-eligible calls, and cross-referenced the surviving records against a national Do Not Call database that his company, TelSwitch, Inc., has compiled directly from the Federal Trade Commission's own daily list since 2017. (Ex. 6, Woolfson Decl. ¶¶ 24–29, 35–38; Ex. 7, Dep. of Aaron Woolfson ("Woolfson Dep.") 20:7–23, 26:6–29:14, 64:12–65:10.) That database has been audited against third-party sources, including audits performed by other experts on behalf of TCPA defendants, without any reported discrepancies. (Woolfson Dep. 29:15–35:23.)

This objective methodology is corroborated, not undermined, by C&N Construction's own records. C&N Construction's HailTrace license itself segregates numbers by classification, allowing the person pulling a list to select "residential or commercial or both," (Ex. 2, Vacco Dep. 45:3–16), and C&N Construction's own Director of Sales has testified that the company telemarketing "was just doing residential." (Ex. 3, Martinelli Dep. 13:7–14.) Courts applying the

same statute have likewise found National Do Not Call Registry classes ascertainable using a defendant's own call and business records, cross-referenced against Registry data. *Krakauer*, 925 F.3d 643 (class members ascertainable where "records… clearly showed when calls were placed and whether the call went through" and "data show[ed] whether a number was residential and connect[ed] the number to particular names and addresses"); *accord Birchmeier*, 302 F.R.D. 240 (class ascertainable through a spreadsheet identifying the unique telephone numbers that received the calls). And a defendant cannot defeat ascertainability by pointing to the state of its own recordkeeping: the district court in *Krakauer* rejected the argument that an "overinclusive" internal do-not-call list rendered the class unascertainable, reasoning that denying certification for a defendant's own poor recordkeeping "would create the perverse incentive for entities to keep poor records and to violate the TCPA's clear requirement that such a list be kept." *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384 (M.D.N.C. 2015). The same is true here, where C&N Construction's own corporate representative could not say whether its scrubbing process was ever documented or verified. (Ex. 2, Vacco Dep. 32:19–34:2.) The Class is therefore ascertainable.

***2. Numerosity is satisfied.***

Joinder is presumptively impracticable, and numerosity satisfied, at forty members. *Anderson v. Weinert Enters., Inc.*, 986 F.3d 773, 777 (7th Cir. 2021). C&N Construction's own calling records confirm that the Class exceeds that threshold by more than four orders of magnitude. Mr. Woolfson's analysis identified **109,642 unique telephone numbers**, registered on the National Do Not Call Registry for more than thirty days, that received two or more calls from C&N Construction within a twelve-month period, totaling **528,855 calls**. (Ex. 7, Woolfson Errata Decl. ¶¶ 3–10.) *See Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024)

(class of over 66,000 potential members "easily satisfied" numerosity); *Birchmeier*, 302 F.R.D. 240 (certifying a class of more than 900,000 consumers).

Nor does *Hossfeld v. Allstate Ins. Co.*, 179 F.4th 1046 (7th Cir. 2026), suggest otherwise. There, the Seventh Circuit affirmed the denial of class certification because the plaintiff could identify only thirty-three unique telephone numbers on the defendant's internal do-not-call list, below the ordinary forty-member benchmark, with no showing of impracticability of joinder. *Id.* The Class here is drawn from a verified, objective analysis identifying 109,642 unique numbers, more than three thousand times the number the Seventh Circuit found insufficient in *Hossfeld*. Joinder of a Class this size, dispersed nationwide, is plainly impracticable.

***3. Commonality is satisfied.***

Commonality is satisfied because the case turns on common contentions capable of classwide resolution. Rule 23(a)(2) requires a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

That is precisely this case. Every member of the Class was called more than once by C&N Construction while registered on the Registry, through a single calling program operated out of a single call center, using a single script that C&N Construction's own Director of Sales wrote and every caller used without variation. (Ex. 3, Martinelli Dep. 24:13–15, 29:3–10.) Every member of the Class was, in principle, subject to the same written Do Not Call Compliance Policy [Vacco Dep. Def. Ex. 1] and the same centralized scrubbing process, administered by the

same two employees. (Ex. 2, Vacco Dep. 65:24–69:22.) Whether that process was actually effective, and whether C&N Construction thereby violated Section 227(c)(5), are questions that will be answered the same way for the entire membership of the Class on the same evidence: C&N Construction's own calling practices, its own written policy, and the sworn testimony of the executives who ran the program. Courts certifying comparable Do Not Call classes have reached the same conclusion, holding that commonality is satisfied where all class members suffered the same injury and advance claims based on the same contention, that the defendant violated Section 227(c)(5) by placing repeat telemarketing calls to numbers on the Registry within a twelve-month period. *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024); *accord Aranda*, 202 F. Supp. 3d 850 (commonality satisfied where every class member suffered the same statutory injury from the same unsolicited calling campaign). Commonality is satisfied.

***4. Typicality is satisfied.***

Plaintiff's claim is typical of the Class. A claim is typical where it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members" and rests on "the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Typicality is a low hurdle that tolerates factual variation and is "determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

Like every member of the Class, Plaintiff had a residential number that was registered on the Registry for years before he was called, and he was called more than once within a twelve-month period by C&N Construction's own representatives using the same script and the same calling program applied classwide. (Ex. 1, Decl. of George Moore ¶¶ 3–5.) Mr. Woolfson's

independent cross-reference of C&N Construction's call records against the Registry, using the identical methodology applied classwide, confirms nine calls to Plaintiff's own number. (Ex. 7, Woolfson Errata Decl. ¶ 3.) Plaintiff's claim and the Class's claims rise and fall on the same legal theory, a straightforward statutory violation of the TCPA's Do Not Call regulations arising from the same calling practice; typicality is "determined with reference to the company's actions," and Plaintiff's claim is indistinguishable from those of the rest of the Class in every respect that matters. *Wagner*, 95 F.3d at 534. Typicality is satisfied.

***5. Plaintiff and counsel are adequate.***

Plaintiff and his counsel will fairly and adequately protect the Class. Adequacy asks whether the representative shares the same interest and injury and is free of disabling conflicts of interest, and whether counsel is competent. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Plaintiff has no interest antagonistic to the Class, understands and accepts a class representative's duties, and has arranged for counsel to advance the costs of this litigation, including class notice. (Ex. 8, Decl. of George Moore ¶¶ 7–9.) Proposed counsel, Paronich Law, P.C., has substantial experience prosecuting TCPA class actions and has committed the resources necessary to litigate this action, including advancing costs, through class notice and trial. (Ex. 8, Decl. of Anthony Paronich ¶¶ 3–5.)

Nothing about Plaintiff's claim creates an individualized defense that would render him atypical or inadequate. Unlike the plaintiff in *Davies v. W.W. Grainger, Inc.*, who had a longstanding, established business relationship with the defendant, had published his fax number in business directories, and arguably consented to be contacted, facts that created a consent defense unique to that plaintiff, No. 13-CV-3546, 2014 WL 2935905, at *2 (N.D. Ill. June 27, 2014), Plaintiff had no relationship with C&N Construction, his number is residential, and C&N

Construction's own corporate representative has confirmed the company has no facts supporting consent from him or any other Class member. (Ex. 2, Vacco Dep. 49:4–23.)

**B. *Common Questions Predominate, and No Individualized Issue Defeats Predominance.***

The common questions that establish commonality and typicality also predominate. "An individual question is one where members of a proposed class will need to present evidence that varies from member to member; a common question is one where the same evidence will suffice for each member to make a *prima facie* showing or the issue is susceptible to generalized, class-wide proof." *Gorss Motels, Inc. v. Brigadoon Fitness, Inc.*, 29 F.4th 839, 843–44 (7th Cir. 2022). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997). The Class need not be completely devoid of individual questions; it is enough that common ones predominate. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) ("The text of Rule 23(b)(3) itself contemplates that such individual questions will be present.").

***1. C&N Construction's direct liability for its own, uniform calling practice is the single, predominating question for the Class.***

Because C&N Construction's own representatives placed the calls at issue directly this case presents none of the agency questions that can complicate TCPA class certification. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) ("[t]he problems that so often plague class actions under Rule 23(b)(3) are wholly absent from this scheme[, because t]he liability determinations involve no questions of individual reliance . . . no complicated contractual obligations . . . and no theories of probabilistic injury"). The controlling question is simply whether C&N Construction called each Class member's number more than once while it was registered on the National Do Not Call Registry, a question answered the same way for every Class member on the same set of records, C&N Construction's own call logs, cross-

referenced against the Registry using the SQL methodology Mr. Woolfson has already applied. (Ex. 6, Woolfson Decl. ¶¶ 24–38; Woolfson Errata Decl. ¶¶ 3–10.)

A second common question reinforces the first: whether C&N Construction's centralized, company-wide process for scrubbing numbers against the Registry was ever actually implemented. C&N Construction's written policy promised that "[a]ll call lists are scrubbed every 31 days against the National Do Not Call Registry," (Ex. 2, Vacco Dep. Ex. 3; Vacco Dep. 26:12–15), responsibility for which rested with just two employees for the entire class period. (Ex. 2, Vacco Dep. 68:16–69:22.) Whether that centralized process worked, or whether, as C&N Construction's own Director of Sales put it, calls to Registry numbers simply "slip[ped] through the cracks" without anyone "verifying," (Ex. 3, Martinelli Dep. 11:9–14), is a single, common question resolvable on the same evidence for every Class member. A defendant's uniform failure to operate its own compliance process is a classwide question, not an individualized one; it does not vary from one Class member's call to the next.

For the Class, registration on the Registry itself creates a presumption that a listed number is residential, and a defendant's own statements about the consumers it intended to solicit can further support a classwide determination of residential status. *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024). That presumption is corroborated here by direct testimony: C&N Construction's own Director of Sales testified the company "was just doing residential" and was "focused on… calling residential." (Ex. 3, Martinelli Dep. 13:7–14.) A consent defense, to the extent C&N Construction raises one, can likewise be resolved through a single classwide determination: C&N Construction's own corporate representative has already testified that the company has no facts supporting that any individual whose number it called, including Plaintiff, provided prior express written consent. (Ex. 2, Vacco Dep. 49:4–23.)

### *2. No other individualized issue predominates.*

None of the issues C&N Construction might invoke is individualized, let alone predominates. Consent is an affirmative defense on which C&N Construction bears the burden, *Blow v. Bijora, Inc.*, 855 F.3d 793, 803 (7th Cir. 2017), and C&N Construction's own 30(b)(6) witness has testified the company has no facts supporting consent from any Class member. (Ex. 2, Vacco Dep. 49:4–23.) Standing is likewise common: the concrete injury for the Class is the unwanted contact itself, suffered uniformly by everyone on the Registry who was called anyway. And because each violation yields the same statutory award on a mathematical basis, "[t]here would be a common method for showing individual damages—a simple formula could be applied to each class member[]." *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 670 (7th Cir. 2015).

Nor is this case like *Toney v. Quality Res., Inc.*, 323 F.R.D. 567 (N.D. Ill. 2018), where the court certified an ATDS class but excluded a National Do Not Call Registry subclass from that same certification order. This action is not a mixed proceeding in which a Registry claim rides alongside unrelated theories; the Registry violation is the sole theory of liability pled, supported throughout by the classwide, objective analysis and uniform corporate practices described above. Predominance is thus satisfied.

### C. *A Class Action Is Superior.*

A class action is the superior method of adjudicating these claims. TCPA claims are routinely certified because they are often worth too little individually to warrant separate suits; absent a class action, there will be little or no litigation at all. *Mullins v. Direct Digit., LLC*, 795 F.3d 654, 665 (7th Cir. 2015); *see also Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) (small statutory awards under Section 227(c)(5) mean individual class members have little

incentive to bring their own suits); *Aranda*, 202 F. Supp. 3d 850 (statutory damages under the TCPA eliminate the need for individualized damages inquiries, supporting superiority). Manageability is no bar, because courts "should not refuse to certify a class merely on the basis of manageability concerns" and may decertify later if a problem proves "truly insoluble." *Mullins*, 795 F.3d at 665.

Notice can be effected through C&N Construction's own call records and standard industry databases. Mr. Woolfson testified that he is able to identify the carrier, and ultimately the subscriber, associated with any telephone number using the National Exchange Carrier Association's numbering-plan data and the North American Numbering Plan Administrator's records, the same local-number-portability infrastructure telephone carriers use to route calls and respond to subpoenas. (Woolfson Dep. 63:17–65:10; Ex. 6, Woolfson Decl. ¶¶ 29–33.) Any difficulty identifying Class members would be a problem of C&N Construction's own making, and a defendant should not be rewarded for poor recordkeeping. *Mullins*, 795 F.3d at 662, 668; *see also Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384 (M.D.N.C. 2015) (denying certification for a defendant's own poor recordkeeping "would create the perverse incentive for entities to keep poor records"). Resolving the Class's claims in a single forum also provides "flexibility, control, and consistency that would not exist with individual litigation." *Mantha v. QuoteWizard.com, LLC*, 347 F.R.D. 376 (D. Mass. 2024). A class action is the superior method of adjudicating these claims.

## V. CONCLUSION

Plaintiff respectfully requests that the Court certify the proposed Class, appoint Plaintiff George Moore as class representative, appoint Paronich Law, P.C. as class counsel, and grant such further relief as is just.

Dated: September 17, 2026

*/s/ Anthony I. Paronich*
Anthony I. Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
Fax: (508) 318-8100
anthony@paronichlaw.com

*Counsel for the Plaintiff*